IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CITADEL HEALTHCARE SERVICES INC., | § § § § § | |
| Plaintiff, | | |
| v. | § § | Civil Action No. 3:10-CV-1077-BH |
| KATHLEEN SEBELIUS, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § § § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order filed September 15, 2010, and the consent of the parties, this matter was transferred for the conduct of all further proceedings. Before the Court is *Defendant's Motion to Dismiss*, filed August 3, 2010 (doc. 8). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED** in part.

### I. BACKGROUND[1]

Plaintiff Citadel Healthcare Services, Inc., is a home health agency providing services in the Medicare program. Health Integrity, LLC, is a Medicare contractor handling details of Part A reimbursements. On September 1, 2009, Health Integrity, LLC, notified Plaintiff that its records would be reviewed to ensure that Medicare claims had been billed and paid appropriately in relation to services provided between July 1, 2007, and June 3, 2009. On May 4, 2010, after Plaintiff had produced the requested records, Health Integrity, LLC, notified Plaintiff by letter that it was suspending all Medicare payments owed to it. The letter explained that the suspension was based

---

[1] The background information consists of undisputed facts in the record and allegations in the complaint.

on reliable information that an overpayment or fraud or willful misrepresentation existed, or that the payments to be made might not be correct. From a random sample of Medicare claims involving 36 beneficiaries and 55 home health episodes, the letter identified 5 beneficiaries that were not homebound during the sample episodes and 5 out of 5 beneficiaries that did not meet Medicare requirements for skilled care during the sample episode.

On May 14, 2010, Health Integrity, LLC, received a rebuttal statement from Plaintiff requesting termination of the suspension. Plaintiff argued that the suspension notice failed to provide specific reasons for the suspension, only recited grounds set out in the suspension regulation, and failed to provide prior notice of suspension as required by the regulations. Health Integrity, LLC, clarified that it had not completed its review, but that based on five interviews, it had found reliable information that an overpayment or misrepresentation might exist. It explained that medical records would be requested from Plaintiff to review the additional 48 episodes in the random sample of claims to determine if they met the guidelines for homebound status, and that prior notice was not required because of the suspected fraud.

On May 28, 2010, Plaintiff filed suit alleging that Defendant had failed to issue an overpayment notice and had failed to extend appeal rights within a reasonable time, even though Health Integrity, LLC, had completed its audit and notified Plaintiff of its non-compliance findings. Plaintiff also alleged that Defendant and unknown officials, employees, and agents were improperly suspending Medicare payments under a clandestine policy designed to reduce the overall number of home health agencies and that the policy circumvented the statutory prohibition against recoupment set forth in 42 U.S.C. § 1395ddd. Plaintiff claimed violations of constitutional due process rights, the Medicare Act and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et.*

*seq.* It sought a declaratory judgment, a writ of mandamus compelling Defendant to issue a notice of overpayment and extend appeal rights to Plaintiff, and injunctive relief preventing Defendant from suspending and recouping its Medicare payments and ordering restoration of all recouped payments to Plaintiff. Plaintiff invoked federal question jurisdiction under 28 U.S.C. § 1331, mandamus jurisdiction under 28 U.S.C. § 1361, and jurisdiction under 42 U.S.C. § 405(g) and the APA.

On August 3, 2010, Defendant moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motions are now ripe for determination.

## II. THE MEDICARE PROGRAM

The Medicare program, established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and commonly known as the Medicare Act, pays for covered medical care to eligible elderly and disabled persons. Medicare Part A, relevant here, provides for payment on behalf of eligible beneficiaries for in-patient hospital services and certain post-hospital services that include home health services furnished by a home health agency. 42 U.S.C. §§ 1395(d) and 1395(b). The Department of Health and Human Services, through the Secretary ("Defendant"), administers the Medicare program and has delegated this function to the Center for Medicare and Medicaid Services ("CMS"). Routine administration of Medicare Part A, such as auditing and reimbursement activities, is handled by Medicare contractors that serve as fiscal intermediaries between CMS and service providers.

CMS or its contractor may suspend a provider's payments when there is reliable information that an overpayment or fraud or willful misrepresentation exists, or when the payments to be made

may not be correct, although additional evidence may be needed for a determination. 42 C.F.R. § 405.371(a)(1). If it is determined that a suspension should be put into effect, CMS or its contractor must notify the provider of its intention to suspend payments and the reasons for making the suspension. 42 C.F.R. § 405.372(a)(1). Prior notice of intent is not required if the Medicare Trust fund would be harmed by such notice or if the intended suspension involves suspected fraud or misrepresentation. 42 C.F.R. § 405.372(a)(3) & (4). The duration of a suspension is limited initially to 180 days and may be extended under certain conditions. 42 C.F.R. § 405.372(d). Suspension is defined as the withholding of payment by a contractor from a provider "before a determination of the amount of the overpayment exists." 42 C.F.R. § 405.70. If after obtaining additional evidence, the contractor determines there is no overpayment, it rescinds the suspension. 42 C.F.R. 405.372(c). If it determines that an overpayment exists, it can recover or recoup the overpayment from the withheld amounts. *Id.*

### III. 12(b)(1) MOTION TO DISMISS

Defendant first moves to dismiss this action for lack of subject matter jurisdiction. (Mot. Br. at 7.)

**A. Legal Standard**

A motion to dismiss for lack of subject-matter jurisdiction is properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery*

*v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* Where the defendant supports the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting jurisdiction constantly carries the burden of proof to establish that

5

jurisdiction does exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

Here, Defendant's motion presents a factual attack because it is supported by evidence. However, the Court, is not required to resolve any disputed facts.

**B. Federal Question Jurisdiction**

Defendant argues that federal question jurisdiction under 28 U.S.C. § 1331 is precluded in this case by 42 U.S.C. §§ 405(h) and 1395ii. (Mot. Br. at 7-9.)

Section 405(h) of the Social Security Act precludes federal question jurisdiction of all claims arising under the Social Security Act. 42 U.S.C. § 405(h). Section 1395ii of the Medicare Act in turn incorporates § 405(h) to preclude federal question jurisdiction of all claims arising under the Medicare Act. 42 U.S.C. § 1395ii; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000); *Weinberger v. Salfi*, 422 U.S. 749, 761 (1975). "A claim arises under the Medicare Act if both the standing and the substantive basis for the presentation of the claim is the Medicare Act, or if the claim is 'inextricably intertwined' with a claim for Medicare benefits." *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 557 (5th Cir.2004) (citing *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)). The term "arising under" is broadly construed to encompass all claims for relief, regardless of whether the claimant seeks benefits, or declaratory or injunctive relief. *Ringer*, 466 U.S. at 615. "Title 42 U.S.C. § 405(g) is the sole avenue for judicial review of all claims arising under the Medicare Act." *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir.1999); *RenCare*, 395 F.3d at 557 (citing 42 U.S.C. §§ 405(h) and 1395ii).

Here, Plaintiff seeks to enjoin Defendant from suspending and recouping its Medicare payments and to compel Defendant to issue a notice of overpayment, extend administrative appeal rights, and restore all recouped payments to Plaintiff. Any claimed violations and the relief sought

clearly arise under the Medicare Act. Despite its constitutional tenor, Plaintiff's due process claim also arises under the Medicare Act because it is premised on the agency's suspension and alleged recoupment of its Medicare payments. Accordingly, Plaintiff cannot rely on § 1331 for subject matter jurisdiction; § 405(g) is the sole avenue for judicial review in this case. *See Affiliated*, 164 F.3d at 286 (even though claims were presented as constitutional claims, they were inextricably intertwined with a claim of entitlement to benefits and therefore subject to § 405(g)'s exhaustion requirement).

## C. Jurisdiction under § 405(g)

Defendant concedes that § 405(g) provides a basis for jurisdiction for claims arising under the Medicare Act, but argues that § 405(g) jurisdiction is not available in this case because Plaintiff has not exhausted its administrative remedies. (Mot. Br. at 8-9.) Plaintiff essentially argues waiver of the exhaustion requirement in this case. (*See* Compl. at 4-5.)

Under § 405(g), an individual may obtain judicial review of a "final decision of the Secretary made after a hearing to which he was a party." 42 U.S.C. § 405(g). The "final decision" requirement has two elements: a non-waivable requirement that the claim be first presented to the Secretary and a waivable requirement that the administrative remedies prescribed by the Secretary be exhausted. *Bowen v. City of New York*, 476 U.S. 467, 483 (1986); *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). The exhaustion requirement may either be waived by the Secretary or, in exceptional cases, by the courts. *Eldridge*, 424 U.S. at 330. The Supreme Court has approved three factors to consider in waiving the exhaustion requirement: (1) whether a claim is collateral to a demand for benefits, (2) whether exhaustion would be futile, and (3) whether the harm suffered pending exhaustion would be irreparable. *City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir.

1984) (citing *Eldridge* and *Ringer*). "The ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484.

Here, Plaintiff's constitutional due process claim is not collateral to a claim for benefits. Although Plaintiff has framed the claim in constitutional terms by alleging a denial of appeal rights and overpayment notice, it essentially seeks to prevent improper recoupment and suspension of its Medicare payments, which is clearly an administrative remedy. *See Affiliated*, 164 F.3d 282, 285-86 (claim not collateral even though framed in constitutional terms because Plaintiff sought to halt suspension of its Medicare payments). To fully address Plaintiff's claim that its constitutional rights were violated through the improper enforcement of Medicare regulations, "a court would necessarily have to immerse itself in those regulations and make a factual determination as to whether" Defendant was actually in compliance. *See id.*

Additionally, resort to the administrative scheme would not be futile in this case. Contrary to Plaintiff's assertions, Defendant's alleged refusal to issue an overpayment notice and extend appeal rights has not deprived Plaintiff of its administrative remedies. Plaintiff maintains a viable avenue of judicial review to bring its claims. While a decision to suspend benefits is not a final determination subject to judicial review, the suspension may culminate in an appealable determination if the claims are subsequently denied, or if the provider is subsequently excluded from the Medicare program. *See Midwest Family Clinic Inc. v. Shalala*, 998 F. Supp. 763, 767 (E.D. Mich. 1998) (citing 42 C.F.R. § 405.375(c); 61 Fed.Reg. at 63743; *Clarinda Home Health v. Shalala*, 100 F.3d 526, 529 (8th Cir.1996)). Plaintiff can seek judicial review of any procedural non-compliance by the government after a final determination regarding its claims has been made

by the agency. *See Life Source Enters., Inc. v. Shalala*, 2000 WL 33348793, at *7 (W.D. Tex. Nov. 9, 2000) (reaching same conclusion in similar circumstances).

Further, there is no reasonable basis to conclude that Plaintiff will suffer irreparable harm pending exhaustion. "The mere trouble and expense of defending an administrative proceeding is insufficient to warrant judicial review of the agency's action prior to the conclusion of the administrative proceeding." *Cent. Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549 (2d Cir. 1978). Other factors should also be considered, such as whether the claimants will be subjected to deteriorating health pending exhaustion. *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992). Here, it appears unreasonable that any claimants will be deprived of adequate home-based health care and consequently suffer deteriorating health if Plaintiff is forced out of business. *See Affiliated*, 164 F.3d at 286; *Griego v. Leavitt*, 2008 WL 2200052, at *11-12 (N.D. Tex. May 16, 2008). Finally, the policies favoring exhaustion are most strongly implicated where, as here, a Plaintiff challenges "*application* of concededly valid regulations" rather than procedures established by the Secretary. *Abbey*, 978 F.2d at 45 (emphasis in original).

In short, the Court lacks subject matter jurisdiction under § 405(g) because Plaintiff has not exhausted its administrative remedies, and has not shown that waiver of the exhaustion requirement is appropriate in this case.[2]

---

[2] The parties do not specifically address Plaintiff's claim in the complaint that the clandestine policy exception to the exhaustion requirement established by *Bowen v. City of New York*, 476 U.S. 467 (1986), applies. (*See* Compl. at 5.) Plaintiff argues that the policy denies the due process of law to contest an overpayment determination and circumvents the statutory prohibition against recoupment set forth in 42 U.S.C. § 1395ddd. (*Id.*) In *City of New York*, plaintiffs brought a due process challenge based on a clandestine internal policy that denied them disability benefits. 476 U.S. at 469. They alleged that their due process rights were violated because the unpublished agency rule that denied them benefits was not formulated according to the normal procedures of the APA. *See id.* at 473-74; *see also Griego v. Leavitt*, 2008 WL 2200052, at *12 (N.D. Tex. May 16, 2008)(Fitzwater, J.). The Supreme Court waived § 405(g)'s exhaustion requirement based on the *Eldridge* factors, but pointed out that *City of New York* was "materially distinguishable" from a case in which a plaintiff "sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding." *City of New York*, 476 U.S. at 484. This case is such a case

**D. Mandamus Jurisdiction**

Defendant argues that the common law writ of mandamus, codified in 28 U.S.C. § 1361, is not available as a source of jurisdiction in this case. (Mot. Br. at 9-12.)

The federal mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus will issue only in extraordinary circumstances. *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). Mandamus jurisdiction may be invoked when: (1) the plaintiff has a clear right to the relief sought; (2) the defendants have a clear nondiscretionary duty to perform; and (3) no other adequate remedy is available. *In re Stone*, 118 F.3d 1032, 1034 (5th Cir.1997); *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 35 (1980).

The Supreme Court has declined to decide whether mandamus relief is available at all for Medicare claims, or if it is foreclosed under 42 U.S.C. § 405(h). *Ringer*, 466 U.S. at 616. However, the Supreme Court has recognized that mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Ringer*, 466 U.S. at 616. In other words, a plaintiff must exhaust its administrative remedies before it can seek a writ of mandamus. *See Michael Reese Hosp.& Medic. Ctr. v. Thompson*, 427 F.3d 436, 441 (7th Cir. 2005); *BP Care, Inc. v. Thompson*, 398 F.3d 503, 515 (6th Cir.2005); *Lifestar Ambulance Serv., Inc. v. U.S.*, 365 F.3d 1293, 1298 (11th Cir.2004). Since Plaintiff has not exhausted its administrative remedies, the Court lacks jurisdiction over its plea for

---

because "when shorn of its constitutional coating" it alleges a mere deviation from concededly valid regulations. *See Griego*, 2008 WL 2200052, at *12-13 (distinguishing *City of New York* when addressing similar arguments); *see also Janacek v. Leavitt*, 2008 WL 410549, at *10-11 (N.D. Tex. Aug. 27, 2008) (Fish, J.) (same). Plaintiff's clandestine policy assertions are therefore unavailing.

a writ of mandamus.³

**E. APA Jurisdiction**

Even though there is no specific contention regarding jurisdiction under the APA, the Court may *sua sponte* review the basis for subject matter jurisdiction. *See Preston v. Tenet Healthsystem Mem'l Hosp.*, 485 F.3d 804, 812 (5th Cir. 2007). As found earlier, because all the claims in this case arise under the Medicare Act, § 405(g) is the sole basis for judicial review and the Court does not have jurisdiction under the APA. *See Life Source Enters., Inc.*, 2000 WL 33348793, at *8 (since the claims arose under the Medicare Act, there was no jurisdiction under the APA).

In conclusion, the Court dismisses Plaintiff's complaint for lack of subject matter jurisdiction. Since the Court lacks subject-matter jurisdiction, it need not consider Defendant's 12(b)(6) motion for failure to state a claim.

### IV. CONCLUSION

Defendant's 12(b)(1) motion to dismiss is **GRANTED**, and Plaintiff's complaint against Defendant is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED on this 8th day of December, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

³ Plaintiff cites *United States ex. rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 502 (4th Cir. 1999) to show its entitlement to mandamus jurisdiction. In *Rahman*, however, the Government sought to suspend the administrative process until a concurrent judicial proceeding in federal court reached a judgment on the fraud allegations. *Id.* Here, Defendant seeks resumption of the administrative process and a final determination before judicial review can occur.